UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO DAVIS,

Petitioner,

v.

CASE NO. 4:24-CV-11257
HON. F. KAY BEHM

DOUGLAS TASSON,

Respondent.
_______________________________/

**OPINION AND ORDER DENYING THE HABEAS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I. Introduction

Michigan prisoner DeAngelo Davis ("Petitioner"), currently confined at the Alger Correctional Facility in Munising, Michigan, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, § 750.83, felon in possession of a firearm, § 750.224f, and three counts of possession of a firearm during the commission of a felony, § 750.227b, following a jury trial in the Wayne County Circuit Court. He was sentenced, as a fourth habitual offender, § 769.12, to life in prison without the possibility for parole on the murder conviction, a concurrent term of 30 to 40 years in prison on the assault conviction, a concurrent term of 1 to 5 years in prison on

the felon in possession conviction, and 2 years in prison on each of the felony firearm convictions to be served concurrently to each other and consecutively to the other sentences in 2019. In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel. For the reasons stated, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a confrontation at a Citgo gas station and subsequent fatal shooting on a street in Detroit, Michigan on May 28, 2018. The Michigan Court of Appeals described the facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> The case arises from the fatal shooting of Jovan Flynn (the victim). On Memorial Day in 2018, the victim drove his mother's silver Chevrolet Tahoe to the Citgo gasoline station on the corner of Schoolcraft and Greenfield Roads in Detroit to purchase an item for a later barbeque. The victim went into the convenience store while his long-time friend Bobby Gray, Jr. remained in the Tahoe.
>
> Defendant, who lived nearby, drove his mother's black Chevrolet Equinox to the gas station with three passengers. Gray noticed defendant because he was driving aggressively. After defendant backed into a parking spot in front of the Citgo and across from the Tahoe, he and one of his passengers got out of the Equinox and went into the convenience store.[1] Gray observed their demeanor and opined that they were "high, drunk, drug[ged]."
>
> A security camera captured defendant entering the convenience store

at 4:05:08 p.m. It also showed the victim exiting the store at 4:05:15 p.m. and returning to his Tahoe. The victim was visibly upset and Gray inquired about what was upsetting him. The victim told Gray:

> [M]an, these n***ers in the gas station are on tip [meaning they had a problem or an issue]. I don't know what they [are] on. What they lookin[g] for. What they [sic] problem is. I had a stare down with them and some words.

Gray encouraged the victim to move forward with their plans for the day. At 4:06:03 p.m., the video captured defendant standing in between the Equinox's opened door and looking at the Tahoe. According to Gray, as the victim's Tahoe passed defendant's Equinox on the way out, the victim and defendant locked eyes and the victim blurted out, "[W]hatever[;] it is what it is." The video also showed defendant pointing toward the Tahoe.

At 4:06:15 p.m., the Tahoe left the Citgo parking lot, turned left onto Schoolcraft Road, and stopped for a red light. In the interim, defendant entered his vehicle, but then returned to the Citgo store, opening the door and retrieving his passenger. Thirty-five seconds later, at 4:06:50 p.m., the Equinox left the Citgo.

The Tahoe turned right onto Greenfield Road and proceeded left onto Grand River Avenue. The victim then informed Gray that "they were being followed by the guys from the gas station." Gray did not see the Equinox when he looked in the rearview mirror; however, when he looked in his passenger-side mirror, he saw the speeding black Equinox approaching.

The victim slowed for a red light. Gray then heard a gunshot and a bullet crashed through the Tahoe's third-row rear passenger-side window from the direction of the Equinox. Gray quickly ducked down. More gunshots—five or six—followed into the open window on the Tahoe's passenger-side. The victim fell over onto Gray after the second shot. The Tahoe continued moving because the victim's weight was on the gas pedal. Gray grabbed the steering wheel and crashed the Tahoe into the wall of a nearby business at 4:08:20 p.m.[2]

By the time an ambulance arrived, the victim was dead. An autopsy concluded that the victim died from gunshot wounds to his right neck and right chest.

Investigating police located five shell casings on Grand River Avenue. Four casings were in decent shape and were .9-millimeter Luger caliber; the fifth casing was a mangled .45 auto caliber. A forensic firearm and tool mark expert testified that all four .9-millimeter shell casings were fired from the same weapon. This was also true of the five fired metal jacketed bullets and bullet jackets the police recovered from the victim's Tahoe. Those bullets and jackets were from a .9-millimeter, .38-caliber, or .357 caliber class. By the time police searched defendant's car and the house he lived in ten or more hours after the shooting, they did not find a gun. Without it, the expert could not determine whether the shell casings and bullets were fired from the same weapon.

Additionally, Crystal Massey, who had a professional relationship with defendant, and had interacted with him approximately five to seven times since October 2018,[3] identified defendant from still photographs taken from the surveillance video footage as the driver of the Equinox due to his "distinct smile." Another police detective also testified that defendant's cell phone was active in the sector of the gas station and the location where the shooting occurred on the basis of its data.

During closing argument, defense counsel contended that the evidence did not establish that defendant was even present for the shooting, and, instead, defendant had returned to his nearby home. Moreover, defendant had no motive to commit the crime. And, even if the jury somehow concluded that defendant was at the scene of the shooting, he was merely present in the vehicle. It was further argued that defendant was not an aider or abettor because he did not intend the commission of the crimes or possess the firearm that killed the victim as evidenced by the later unsuccessful searches for the weapon.

After the jury found defendant guilty as charged, he moved for a *Ginther*[4] hearing and a new trial due to ineffective assistance of counsel. Defendant claimed that trial counsel failed to object to Massey's identification of defendant, the admission of the video

footage, and defendant's criminal history being provided to the jury. Defendant also alleged that trial counsel failed to properly cross-examine the witnesses and failed to "argue key points in the case which would have led to an acquittal."

In response, the prosecution asserted that defendant was not entitled to an evidentiary hearing to develop his claims for ineffective assistance of counsel because defendant failed to demonstrate that any further factual development of the record would advance his claims. And, in any event, defendant had not satisfied his dual burden of establishing ineffective assistance of counsel under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The trial court held a hearing on defendant's motion and subsequently denied it in a written opinion. The court determined that defendant failed to rebut the presumption that his trial counsel was effective. Counsel's decisions were tactical and defendant failed to demonstrate that trial counsel's performance was deficient. Nor did defendant demonstrate that there was a reasonable probability that the result of his trial would have been different but for trial counsel's alleged failings. The trial court also rejected defendant's claim that he was entitled to an evidentiary hearing because defendant had not shown that further factual development of the record was necessary to advance his claims. On reconsideration, the court agreed that it erred on a procedural ground in resolving defendant's motion, but reached the same result.

[1]This was the second time defendant had been in the store with one of his passengers.

[2]This was captured by another security camera. The distance from the Citgo gas station to the crash site was less than a mile, and, at 4:08:43 p.m., another driver called 911 to report a shooting involving a black Equinox and a gray Denali truck on Grand River Avenue with a person in the gray Denali being hit.

[3]Unbeknownst to defendant's jury, Massey was defendant's parole officer.

[4]*People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*People v. Davis*, No. 350057, 2023 WL 3559659, *1-3 (Mich. Ct. App. May 18,

2023) (footnotes in original).

Following his convictions and sentencing, Petitioner filed a motion for relief from judgment, along with requests for an evidentiary hearing and a new trial, with the state trial court alleging that trial counsel was ineffective in several respects. The trial court denied the motion and both requests. *People v. Davis*, No. 18-006692-01-FC (Wayne Co. Cir. Ct. Sept. 16, 2021); ECF No. 10-16. Petitioner also filed a motion for reconsideration, which was denied. *Id*. (Sept. 7, 2022); ECF No. 10-17.

Petitioner then filed an appeal of right with the Michigan Court of Appeals asserting that the trial court erred in denying his motion for a *Ginther* hearing and raising claims concerning the effectiveness of trial counsel. The court denied relief on those claims and affirmed his convictions. *Id*. at *3-8. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Davis*, 513 Mich. 855, 995 N.W.2d 341 (2023).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. Ineffective assistance of counsel -- for failure to adequately articulate important facts relevant to his defense.

II. Failure to object to security camera video footage.

III. Failure to cross-examine and object to identification testimony.

IV. Failure to object or ask for a mistrial when the judge mentioned his criminal history.

ECF No. 1. Respondent has filed an answer to the petition contending that it should be denied. ECF No. 9.

## III. Standard of Review

Federal law imposes the following standard of review for habeas cases brought by state prisoners:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has

emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.; *see also Mays v. Hines*, 592 U.S. 385, 391 (2021) (confirming that a federal court must consider all of the reasons and evidence supporting the state court's decision).

Thus, to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 101; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016); *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Under § 2254(d)(1), a federal habeas court's review is limited to determining whether the state court's decision comports with clearly established federal law at the time the state court rendered its decision. *Williams*, 529 U.S. at

412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. It also "does not require citation of [Supreme Court] cases-indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are determined solely by Supreme Court precedent. Circuit precedent does not constitute clearly established Federal law as determined by the Supreme Court, and it cannot provide the basis for federal habeas relief. *Kernan v. Cuero*, 583 U.S. 1, 8 (2017) (per curiam); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Wood v. Allen*, 558 U.S. 290, 293 (2010); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). A state

court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to adequately articulate important facts relevant to his defense, i.e. failing to argue that he was not present at the scene of the crime, for failing to object to security camera video footage, for failing to cross-examine and object to identification testimony, and for failing to object or ask for a mistrial when the judge mentioned his criminal history. Respondent contends that one claim is procedurally defaulted (at least in part), that one claim is unexhausted, and that all of the claims lack merit.

### A. Procedural Default/Exhaustion

As an initial matter, Respondent contends that certain claims are unexhausted or procedurally defaulted. The Court declines to address such defenses. A prisoner filing a habeas petition under § 2254 must first exhaust available state remedies. 28 U.S.C. §§ 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one

full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite to bring a habeas action. *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987). For example, an unexhausted claim may be addressed if pursuit of state remedies would be futile, *Witzke v. Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the claim is meritless such that addressing it would be efficient and not offend federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on merits despite failure to exhaust state remedies). Such is the case here.

Additionally, while a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). And federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although

procedural default often appears as a preliminary question, we may decide the merits first.”). The Supreme Court has explained the rationale behind such a policy: “Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.” *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issues are complex and intertwined with the underlying issues, and the claims are more readily decided on the merits. The Court shall proceed to the merits of the claims.

**B. Merits**

Petitioner asserts that trial counsel was ineffective in several respects. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for establishing that a defendant received ineffective assistance of counsel. First, a petitioner must prove that counsel’s performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. at 687. Second, the petitioner must show that counsel’s deficient performance prejudiced the defense. Counsel’s errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

**1. Presence at the Scene**

Petitioner first asserts that trial counsel was ineffective for insufficiently arguing that he was not present at the scene of the crime. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief. The court explained:

> Defendant alleges that counsel was ineffective for failing to "argue the key points in the case which would have led to an acquittal." In his affidavit, defendant alleged his trial counsel failed to specifically argue points regarding "motive" and defendant's placement at the scene of the crime. Moreover, counsel failed to assert "that the defendant never was in possession or never had a firearm discharged from his vehicle" consistent with the forensic analysis performed on the Equinox. On appeal, however, defendant raises only the claim that trial counsel failed to argue the evidence showing that he "was never in possession of a firearm and no firearm was fired from his Equinox, which is consistent with forensic analysis."[7]
>
> The record does not support this claim. During closing argument, defense counsel stated: "[T]he analysis of the [Equinox] ... was [that it was] nice and clean inside and there was no evidence of any crime found in it." Additionally, counsel observed: "[I]n that video you don't see anybody with their arm out the window shooting at the car driven by [the victim]. None of that's recorded here." Because defendant failed to establish the factual predicate for his claim, he is not entitled to relief. *Hoag*, 460 Mich at 6. To the extent that defendant argues trial counsel's remarks were "generic" and "never emphasiz[ed] the point," counsel's decisions regarding the evidence

highlighted during closing argument are presumed to be a matter of trial strategy. *Putnam*, 309 Mich App at 248. In light of the arguments delineated above, defendant has not demonstrated that counsel's performance was deficient or that he was prejudiced. *Id*.

[7]For the sake of completeness, we address defendant's now-abandoned claims regarding counsel's closing argument as it pertained to defendant's lack of motive and lack of presence during the shooting.

After the prosecution submitted that motive had been established by evidence of the "stare down," defense counsel argued the only evidence of this was Gray's testimony that the victim told Gray, "somebody was being on a tip in there," "[w]hatever that means." Defense counsel then argued despite this "street lingo," Gray "never [said] who it [was] that [the victim] ha[d] the beef with inside." And that "seven seconds [was] not enough time for all of that to occur." Counsel further reminded the jury that Massey identified defendant by referencing his distinct smile and questioned whether defendant was the one engaged in the stare down Gray described, adding: "Well, if a guy is smiling where is an intent to kill? Where is some big chip on his shoulder that he wants to end the life of another human being or put them in danger of losing their life? Commit an assault with the intent to murder? There's none of that."

Regarding defendant's presence at the scene of the crime, defense counsel argued that it was understandable that his phone records put defendant in the cell-phone servicing zone because he lived near the Citgo and the crash site. Counsel posited that if there were cameras at Greenfield and Grand River, they would have shown defendant continuing on to his home, and, in fact, defendant was checking his voice messages shortly after the shooting. Counsel remarked that it would "be equally reasonable to believe that a man who lives in that area ... went to ... where he lives and was there when this horrible tragedy occurred." And counsel asserted that the "most logical thing ... is that he [was] back at [his home] by the time all of this [took] place."

*Davis*, 2023 WL 3559659 at *6-7 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner fails to show that counsel's performance was deficient. As explained by the Michigan Court of Appeals, such a claim is belied by the record. During closing arguments,

trial counsel made several reasonable arguments contesting Petitioner's use of a weapon, his intent and motive (or rather lack thereof) to commit the offense, and his presence at the scene of the crime. *See* 6/13/19 Trial Tr., pp. 32-34, 38-39, 43-44; ECF No. 10-13, PageID.606-608, 612-613, 617-618. The fact that counsel's strategy and arguments were unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner fails to establish that counsel's conduct was unreasonable or fell outside the wide range of competent assistance.

Second, Petitioner to show that he was prejudiced by counsel's conduct. The prosecution presented significant evidence of Petitioner's guilt, including eyewitness testimony from Bobby Gray Jr., the security camera video footage, identification testimony by Crystal Massey, and the fact that Petitioner's vehicle (owned by his mother) was viewed driving near the victim's vehicle at the time of the shooting. *See, e.g.,* 6/11/19 Trial Tr., pp. 35-56, ECF No. 10-10, PageID.351-372; 6/12/19 Trial Tr., pp. 7-8, 15-35, 39, 58-62, ECF Nos. 10-11, 10-12, PageID.473-474, 481-501, 505, 524-528. Petitioner offers no specific evidence or arguments which counsel should have presented that would have benefitted his defense or otherwise affected the outcome at trial. Conclusory allegations,

without evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not warrant an evidentiary hearing on habeas review). Petitioner fails to establish that counsel was ineffective. Habeas relief is not warranted on this claim.

### 2. Security Camera Video Footage

Petitioner next asserts that trial counsel was ineffective for failing to object to the admission of security camera video footage and failing to obtain/admit additional footage. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief. The court explained:

> Defendant argues his counsel was ineffective for failing to object to the admission of the video surveillance footage. Defendant explains that the video, which was missing slightly over three minutes of footage, "showed the video had been tampered with" and "counsel should have moved to suppress [it] because [the] purported 'glitch' rendered it unreliable." Defendant also alleges that counsel's failures deprived defendant of a substantial defense because the glitch allowed the prosecution to present "a false narrative of some sort of interaction between" the victim and defendant that never occurred. We disagree.
>
> During trial, Detroit Police Department Detective Antonio Carlisi testified that he compiled the video played for the jury at trial by combining footage from multiple surveillance cameras at the Citgo and other businesses along the route driven by the victim. Detective

Carlisi explained that the footage from Citgo's front-angle camera, which was part of Project Green Light,[5] was missing approximately three minutes. More specifically, a technical "glitch" caused the recording to jump from 3:59:32 to 4:02:28 p.m. Even so, footage from a separate Citgo side-angle security camera was uninterrupted. In other words, the three minutes absent from the front-angle camera was captured by the side-angle camera, albeit not in color or in high definition. The side-angle camera footage showed that the Equinox initially pulled into the Citgo parking lot at 3:59:43 p.m. as the victim and Gray were seated inside the Tahoe. This was the first time [that] defendant and his passengers were at the Citgo. And although the victim's Tahoe was in the parking lot, no encounter occurred. Instead, the side-angle footage showed the victim walking toward the convenience store as defendant and his companions were in the process of leaving. Once the victim entered the store, the Equinox left before returning about two- and one-half minutes later. At that point, the victim was already inside the store and the interaction that the victim reported to Gray occurred when the victim was leaving the store and defendant was entering it.

Outside of defendant's conclusory assertion of tampering with the front-angle camera, defendant offers nothing to show that the video with the glitch was intentionally altered. Nor does defendant cite any authority that the video footage would have been inadmissible due to this technical glitch when it otherwise accurately captured what occurred. *See People v Hack*, 219 Mich App 299, 308-310; 556 NW2d 187 (1996). Therefore, defendant has not carried his burden of showing that trial counsel performed deficiently by failing to object to the front-angle video being admitted as evidence during trial or by failing to move for its suppression. *See People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]"); *Thomas*, 260 Mich App at 457 ("Counsel is not ineffective for failing to make a futile objection."). Nor has defendant shown that there was a reasonable probability the outcome of trial would have been different had counsel objected to the front-angle video footage given that the separate side-angle camera captured what occurred when the front-angle camera faltered. Furthermore, the prosecution never misrepresented that an encounter between the victim and defendant occurred during the "glitch;" instead, the prosecution maintained that

> the encounter between the victim and defendant occurred when the victim exited and defendant entered the Citgo store.
>
> Defendant further argues counsel was ineffective for failing to "obtain pertinent video surveillance from inside the gas station." Again, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *Hoag*, 460 Mich at 6. In this case, defendant recognized in his affidavit that Detective Carlisi testified that he recovered camera footage from inside the Citgo. The record also reflected that defendant and counsel signed pretrial orders declaring: "[t]he Prosecutor and Defense Counsel represent that all pretrial motions and discovery have been completed...." During a pretrial hearing, defense counsel told the court that the parties were "in agreement that there's no video recording of a confrontation inside the store" and that he saw no interaction on the video. Consequently, defendant failed to demonstrate that trial counsel performed deficiently by not introducing into evidence the in-store video footage.[6] *Id*.
>
> [5]The city and business owners agree to have video surveillance cameras that have real-time connection that the city and police can view.
>
> [6]To the extent defendant suggests counsel was ineffective for failing to present the in-store video, this argument was not included in defendant's statement of questions presented, and, therefore, is unpreserved. MCR 7.212(C)(5). In any event, this Court presumes "decisions regarding what evidence to present ... [are] matters of trial strategy." *Putman*, 309 Mich App at 248. Defendant has not rebutted this presumption, and, given the evidence presented, defendant has not shown that there is a reasonable probability that presenting the in-station videotape would have resulted in a different outcome at trial.

*Davis*, 2023 WL 3559659 at *4-5 (footnotes in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that counsel's performance was deficient. The police detective admitted that there was a technical "glitch" in the Green Light camera recording with a three-

minute gap, but explained that the gas station's own "side-angle" camera included the missing time. Defense counsel acknowledged the same, and both recordings were referenced at trial. *See* 6/12/19 Trial Tr., pp. 17-20, 40; ECF No. 10-11, PageID.483-486, 506. The Green Light video footage was clearly relevant and admissible to show the events near and outside the gas station. There is no evidence that the Green Light video with the glitch was "tampered with" or intentionally not preserved, and both parties were able to view the gas station's own surveillance video. Petitioner offers no basis for exclusion of the Green Light video under the Michigan Rules of Evidence. Counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner's challenge to the admission of the security footage is purely conclusory. As discussed, conclusory allegations are insufficient to justify habeas relief. *See Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733. Petitioner also fails to show that he was prejudiced by counsel's conduct.

The same can be said as to any claim that counsel was ineffective for not obtaining or moving to admit the gas station's indoor video recording. Decisions

as to what evidence to present are presumed to be matters of trial strategy. *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-523. The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, the record indicates that counsel reviewed the gas station's video depicting the parties inside the station, agreed with the prosecution that it did not show a confrontation inside the station, *see* 5/24/19 Pretrial Hrg. Tr., p. 13, ECF No. 10-8, PageID.226, and chose not to seek its admission. Counsel may have reasonably decided that the video was not particularly relevant or useful to the defense because the prosecution did not claim that a confrontation occurred inside the gas station. Petitioner fails to rebut the presumption that counsel's decision was sound trial strategy or otherwise show that it was unreasonable.

Petitioner also fails to show that he was prejudiced by counsel's conduct, i.e. that he was deprived of a substantial defense. He does not specify what more the gas station's inside video would have depicted that would have benefitted his defense. To be sure, the prosecution claimed, and the evidence indicated, that the

altercation occurred as the victim exited/Petitioner entered the gas station, and the shooting occurred on a road outside the gas station. *See, e.g.,* 6/11/19 Trial Tr., pp. 40-46, ECF No. 10-10, PageID.356-362; 6/13/19 Trial Tr., pp. 15-16, ECF No. 10-13, PageID.589-590. Petitioner fails to show that counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

**3. Identification Testimony**

Petitioner next asserts that trial counsel was ineffective for failing to cross-examine Crystal Massey and object to her identification testimony. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief. The court explained:

> Defendant contends counsel was ineffective for failing to cross-examine Massey. In his affidavit, defendant stated that he asked trial counsel to cross-examine "the prosecution's witness," but counsel did not. On appeal, defendant asserts that his meetings with Massey only lasted for "a matter of minutes" and that counsel should have cross-examined Massey to establish "the brevity of their interaction" to challenge the reliability of her identification.
>
> At the preliminary examination, Massey testified that she became defendant's parole agent in October 2017 and met with him monthly for a maximum of ten minutes. At trial, Massey testified that she had known defendant since October 2017, and interacted with him "[a]pproximately five to seven times." Massey identified defendant in the videotape and photographic stills therefrom due to his distinctive smile. While defense counsel did not cross-examine Massey, "decisions regarding ... how to question witnesses are presumed to be matters of trial strategy." *Putman*, 309 Mich App at 248. And defendant has not shown that trial counsel's performance fell below

> an objective standard of reasonableness or that there was a reasonable probability the outcome of his trial would have been different had his counsel cross-examined Massey in light of the videotape and still photographic evidence presented at trial depicting defendant as the driver of the Equinox owned by his mother.
>
> Defendant also argues that counsel was ineffective for failing to object to Massey's identification testimony. More specifically, defendant asserts that Massey's identification testimony "invaded the province of the jury."
>
> A lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. And a lay witness's testimony identifying a witness via a photograph or video is admissible where there is "reason to believe that the witness is more likely to identify correctly the person than is the jury." *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013) (quotation marks and citation omitted). The record demonstrates that Massey's identification of defendant was admissible under MRE 701 because she repeatedly saw defendant over the course of several months during their professional relationship and there was reason to believe she was more likely to correctly identify defendant than the jurors. *Fomby*, 300 Mich App at 52. Thus, counsel was not ineffective for failing to make a futile objection. *Thomas*, 260 Mich App at 457. And, even if we had concluded counsel's performance had been deficient, defendant failed to demonstrate that he was prejudiced in light of Gray's testimony and the compelling video footage admitted during trial.

*Davis*, 2023 WL 3559659 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that counsel was deficient for not cross-examining Massey or that he was prejudiced by such conduct. The cross-examination of witnesses, like deciding

what evidence to present, is a matter of trial strategy. *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). In this case, counsel may have reasonably decided that there was no benefit to cross-examination given Massey's testimony that she met Petitioner five to seven times and recognized him. Additional questioning could have bolstered, rather than negated, her identification. Counsel instead chose to challenge her testimony in closing arguments – making a reasonable argument for doubting her testimony that she recognized Petitioner from his smile and/or negating Petitioner's intent to commit the crime. *See* 6/13/19 Trial Tr., pp. 33-34, ECF No. 10-13, PageID.607-608. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss*, 286 F.3d at 859.

Moreover, Petitioner fails to show that he was prejudiced by counsel's conduct. He offers no evidence as to what counsel could have gleaned from cross-examination or how further questioning would have benefitted his defense. Again, conclusory allegations are insufficient to justify habeas relief. *Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733.

Petitioner similarly fails to show that counsel was ineffective for not objecting to the admission of Massey's identification testimony. The Michigan Court of Appeals ruled that her testimony was properly admitted under the

Michigan Rules of Evidence. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Consequently, Petitioner cannot establish that counsel erred or that he was prejudiced. Counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499; *see also Coley*, 706 F.3d at 752. Furthermore, as noted by the Michigan Court of Appeals, the prosecution presented additional and significant identification evidence through Gray's testimony and the surveillance camera video footage. Petitioner fails to show that counsel was ineffective. Habeas relief is not warranted on this claim.

**4. Mistrial/Criminal History Reference**

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object and move for a mistrial when the judge informed the jury about his criminal history. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief. The court explained:

> Defendant argues that counsel was ineffective for failing to object and request a mistrial when the trial court incorrectly informed the jury

> about defendant's criminal history. More specifically, during jury selection, the trial court read the Information pertaining to the felon-in-possession charge, stating that defendant "did possess or transport a firearm when ineligible to do so because he had been convicted of murder -- because he had been convicted of a felony...." Although the trial court did state that defendant had been convicted of murder, it immediately amended its statement to "convicted of a felony." The trial court further instructed the jury that the Information was "not evidence." And, during trial, the parties stipulated that defendant "had been previously convicted of a specified felony" and the trial court instructed the jury to base its decision on properly admitted evidence. "Jurors are presumed to follow their instructions[.]" *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted).
>
> Because the trial court swiftly corrected its error, we conclude that defense counsel was not ineffective for failing to object. Indeed, an objection by counsel would have resulted in the same outcome—the court would have corrected the word "murder" to "felony." Additionally, an objection from counsel may have further drawn the jury's attention to the word "murder," and therefore, it may have been counsel's strategy to remain silent so as to not draw additional attention to the court's error, especially considering the court's own timely correction and instruction. *See Unger*, 278 Mich App at 242 ("declining to raise objections ... can often be consistent with sound trial strategy"). In any event, defendant has not shown that there was a reasonable probability that the outcome of the trial would have been different if counsel had objected or moved for a mistrial in light of the court's curative actions and instructions and the evidence presented.

*Davis*, 2023 WL 3559659 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner fails to show that counsel erred by not objecting to the trial court's reference to "murder" while recounting the felon in possession charge listed in the information to the

jury. Given that the trial court immediately corrected its reference to "felony," *see* 6/10/19 Trial Tr., pp. 17-18, ECF No. 10-9, PageID.249-250, counsel may have reasonably decided that the jury would understand that the court misspoke rather than believe that Petitioner had previously been convicted of murder and that an objection or a request for a mistrial would draw more attention to the issue (and potentially lead the jury to erroneously believe that Petitioner had a prior murder conviction). Given the court's curative action, counsel may have also reasonable decided that an objection or a request for a mistrial would be futile. As discussed, counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499; *see also Coley*, 706 F.3d at 752.

Second, Petitioner fails to show that he was prejudiced by counsel's conduct. The trial court promptly corrected its mistake and subsequently instructed the jury about the proper consideration of the information, what constitutes evidence, and the proper consideration of the evidence. *See* 6/10/19 Trial Tr., pp. 17-18, 74, ECF No. 10-9, PageID.249-250, 306; 6/13/19 Trial Tr., pp. 57-59, ECF No. 10-13, PageID.631-633. Such instructions cured any possible prejudice to Petitioner. Jurors are presumed to follow a trial court's instructions, *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow

the law as charged, and they are expected to follow it."), and Petitioner has not rebutted that presumption. He fails to show that counsel erred and/or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

In sum, Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. More importantly, for the purpose of habeas review, the Michigan Court of Appeals' decision to that effect is reasonable. Habeas relief is not warranted.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the habeas petition.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists could find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court denies Petitioner leave to proceed in forma pauperis on appeal. This case is closed.

**SO ORDERED**.

Dated: September 30, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge